IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HR PROPERTIES OF DELAWARE LLC, and THE ROYAL TRUST OF NEW ORLEANS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 11 C 8638 |
| ADAMS AND REESE LLP, BASIN STREET STUDIOS LLC, PELICAN LOOP DEVELOPMENT CO. LLC, ARETE WEALTH MANAGEMENT LLC, STRATEGIC BUSINESS DEVELOPMENT, LLC, GREEN COAST ENTERPRISES LLC, RON NAKAMOTO, ROBIN B. CHEATHAM, LISA M. HEDRICK, ALEXANDER S. KELSO, Jr., WILLIAM BRADSHAW II, and JAMES DAVIDSON, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER GRANTING
THE LAW FIRM DEFENDANTS' AND GREEN COAST DEFENDANTS'
MOTIONS TO DISMISS [25] [27]

JAMES F. HOLDERMAN, Chief Judge:

On April 4, 2012, plaintiffs HR Properties of Delaware LLC ("HR Properties") and The Royal Trust of New Orleans ("Royal Trust") (together "Plaintiffs") filed a nine-count Amended Complaint alleging generally that the twelve named defendants together conspired "to fraudulently obtain the approval of a business reorganization plan in bankruptcy" to the detriment of Plaintiffs. (Dkt. No. 21 ("Am. Compl.") ¶ 3).) The reorganization plan at issue—the Sixth Amended Plan of Reorganization (as modified on December 21, 2010)—was part of a Chapter 11 bankruptcy proceeding filed in the Eastern District of Louisiana by an entity known as Basin Street #2 Limited Partnership ("BS2LP"). (*Id.* ¶ 98; *see also* Dkt. No. 1-8, Pls.' Ex. 8 ("December

1

Amended Plan"); *see generally In re Basin Street #2 Limited Partnership*, Case No. 06-B-11359 (Bankr. E.D. La.) ("Bankruptcy Case").) The transaction at issue involved the sale of "the Winn Dixie Property" from BS2LP to defendant Basin Street Studios LLC ("BSS"), which allegedly had the effect of destroying "Plaintiffs' interest in BS2LP . . . [and] Plaintiffs' business opportunity to further develop [the Winn Dixie] property." (Am. Compl. ¶¶ 3-4, 73-111.)  The Winn Dixie Property is located in New Orleans, Louisiana.   (Am. Compl. ¶¶ 36-37.)

This order addresses two pending motions to dismiss or, in the alternative, to transfer this case. The first motion was filed by defendants Adams and Reese LLP ("Adams and Reese"), Robin B. Cheatham ("Cheatham"), and Lisa M. Hedrick ("Hedrick") (collectively the "Law Firm Defendants"). (*See* Dkt. No. 25 ("Law Firm Defendants' Motion To Dismiss Or Transfer To Eastern District Of Louisiana").) The second motion was filed by defendants Alexender S. Kelso, Jr. ("Kelso"), William Bradshaw II ("Bradshaw"), and Green Coast Enterprises LLC ("Green Coast") (collectively the "Green Coast Defendants"). (*See* Dkt. No. 27 ("Green Coast Defendants' Combined Motion To Dismiss And Transfer To Eastern District Of Louisiana").)[1]

For the reasons set forth below, both motions are granted and Plaintiffs' claims against the Law Firm Defendants and Green Coast Defendants are dismissed for lack of personal jurisdiction.

BACKGROUND

On April 19, 2012, this court granted the Law Firm Defendants' and Green Coast Defendants' joint motion for leave to address only the issues of personal jurisdiction, venue, and transfer at this point in the litigation. (Dkt. No. 24.) The court therefore only includes the

---

[1] Defendants BSS, Pelican Loop Development Co. LLC, Arete Wealth Management LLC, Strategic Business Development LLC, Ron Nakamoto, and James Davidson have not yet filed appearances in this case.

allegations of the Amended Complaint pertinent to the issues pending before the court, as well as a general introduction to Plaintiffs' claims.

At this stage of the proceedings, the court accepts the factual allegations of the Amended Complaint as true and resolves any disputed jurisdictional facts in the light most favorable to Plaintiffs. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012) (citing *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)).

A. <u>Allegations Involving Royal Trust</u>

Plaintiff Royal Trust is a trust organized under the laws of Louisiana, "with an address at" 1940 Chestnut Avenue, Wilmette, Illinois 60091. (Am. Compl. ¶ 7.) Patricia Dalton Ohle ("Patricia Ohle"), who is not a party to this lawsuit, is Royal Trust's trustee. (*Id.* ¶ 8.)

Defendant Pelican Loop Development Co. LLC ("Pelican Loop") is a limited liability company organized under the laws of Delaware, with offices in Louisiana. (*Id.* ¶ 12.) Defendant Ron Nakamoto ("Nakamoto") is the "principal owner" of Pelican Loop and a Louisiana resident. (*Id.* ¶¶ 24, 26.)

On November 30, 2006, BS2LP filed for bankruptcy in the Eastern District of Louisiana. (*Id.* ¶ 46.) BS2LP is a Louisiana limited partnership formed in 2001 for the purpose of developing real property, and is not a party to this lawsuit. (*Id.* ¶¶ 36-39.) Beginning in January 2007, attorneys from defendant Adams and Reese, a Louisiana law firm, represented BS2LP in the Bankruptcy Case. (*Id.* ¶ 9-10, 20, 22, 47.)

On February 2, 2010, "based on the advice of [Adams and Reese]," Royal Trust and Pelican Loop together created an entity named Storyville Studios, LLC ("Storyville") with the goal of "purchas[ing] the Winn Dixie Property from BS2LP" in the Bankruptcy Case. (Am. Compl. ¶ 73.) The Winn Dixie Property is located at 1501 St. Louis Street in New Orleans,

Louisiana. (*Id.* ¶¶ 36-37; *see also* Dkt. No. 1-6, Pls.' Ex. 6 ("Non-Circumvention Agreement") p. 1, § 1 (giving specific address).) After Storyville's creation, Royal Trust and Pelican Loop each owned a 50% membership interest in Storyville. (Am. Compl. ¶ 75.) On May 24, 2010, the bankruptcy court "authorized Storyville" to purchase the Winn Dixie Property from BS2LP. (*Id.* ¶ 76.)

Defendants Bradshaw and Kelso, both Louisiana residents, are members of defendant Green Coast, a development firm that "focuses on urban areas of the coastal southeast." (*Id.* ¶¶ 27-28; *see also* Dkt. No. 1-7, Pls.' Ex. 7 ("Letter of Intent") at 2 (listing both Bradshaw and Kelso as "Member"); Dkt. No. 1-9, Pls.' Ex. 9 ("BSS Marketing Materials") at 4 (describing Green Coast's focus).) Green Coast is a limited liability company organized under the laws of Louisiana, with offices in New Orleans. (Am. Compl. ¶ 18.)

On November 10, 2010, Storyville entered into a "Confidentiality, Non-Disclosure and Non-Circumvention Agreement" with Bradshaw "to assist the Parties in evaluating and discussing a possible joint venture or other business relationships with respect to the use of [the Winn Dixie Property]." (Am. Compl. ¶ 88; Non-Circumvention Agreement ¶ 1.) Plaintiffs allege that Bradshaw signed this Non-Circumvention Agreement "on behalf of Green Coast," although Green Coast is not specifically mentioned anywhere in the contract. (Am. Compl. ¶ 88.) In relevant part, the Non-Circumvention Agreement states,

> Each party specifically warrants, for itself and for its agents, employees, members, managers, representatives, contractors, subcontractors, attorneys, counselors, accountants, successors and assigns, that it shall not (1) circumvent this Agreement either directly or indirectly through its agreement or association with a third party not subject to this Agreement, (2) purchase or cause to be purchased, the [Winn Dixie Property] or any portion thereof except through and/or from Storyville Studios, LLC . . . .

Non-Circumvention Agreement ¶ 5 (as modified with hand-written corrections); *see also* Am.

4

Compl. ¶ 90.) Plaintiffs contend that Green Coast and its representatives, Bradshaw and Kelso, "could not be involved in any transaction involving the purchase of the Winn Dixie Property by any entity other than Storyville without violating the Non-Circumvention Agreement." (Am. Compl. ¶ 109.) Plaintiffs further allege that the Non-Circumvention Agreement was drafted by Adams and Reese. (*Id.* ¶ 89.)

On November 23, 2010, consistent with the Non-Circumvention Agreement, Green Coast executed a letter of intent with Royal Trust to purchase Royal Trust's indirect interest in BS2LP,[2] as well as Royal Trust's 50% membership interest in Storyville, for $1.2 million. (*Id.* ¶¶ 92-93; *see also* Letter of Intent at 1.) Plaintiffs do not allege that Royal Trust executed the Letter of Intent, and the copy of the Letter of Intent filed with the court is only signed by Kelso, although there are black signature lines for the trustee, Patricia Ohle, and the trust beneficiaries, John K. Dalton, Jr. ("Dalton") and John Ohle ("John Ohle"). (Letter of Intent at 2.) Plaintiffs also do not allege that the bankruptcy court approved of or knew about the proposed sale of Royal Trust's 50% membership interest in Storyville to Green Coast, despite the bankruptcy court having "authorized Storyville" to purchase the Winn Dixie Property from BS2LP. (Am. Compl. ¶¶ 76, 87.)

Instead of honoring the Letter of Intent, Green Coast, Bradshaw, Kelso, Nakamoto, Adams and Reese, and defendant BSS together conspired to substitute BSS for Storyville in the December Amended Plan, with the aim of "cut[ting] the Royal Trust and Storyville from the Winn Dixie transaction." (*Id.* ¶¶ 97-99; *see also* December Amended Plan.) To that end, on December 22,

_____

[2] Royal Trust owned a 50% membership interest in San Francisco Financial Partners of Louisiana, LLC ("San Fran LLC"), and San Fran LLC held a 23.375% limited partnership interest in BS2LP. (Am. Compl. ¶¶ 67-72.) San Fran LLC was also the sole member of Rebirth Management Company, LLC ("Rebirth"), which, in turn, held a 31.625% general partnership interest in BS2LP. (*Id.* ¶¶ 62, 70; *see also* Letter of Intent at 1 (describing San Fran LLC's relationship to Rebirth); 3rd Partnership Agreement at § 2.3(b).)

2010, Adams and Reese submitted to the bankruptcy court "what it described as an 'immaterial modification' to the Sixth Amended Plan substituting BSS for Storyville." (Am. Compl. ¶ 98.)

At the bankruptcy court hearing on December 22, 2010, Nakamoto made false representations to the court that Storyville could not obtain financing from investors to purchase the Winn Dixie Property, because investors refused to invest in Storyville due to John Ohle's prior criminal conviction and his "indirect involvement[3] in Storyville." (*Id.* ¶ 100.) In fact, potential investors Green Coast, Kelso, and Bradshaw were aware of John Ohle's criminal conviction, and had not objected to investing in Storyville on that basis. (*Id.* ¶¶ 95, 108.)

Nakamoto also falsely represented to the bankruptcy court that an entity named CRI had issued a credit facility agreement to fund BSS's purchase of the Winn Dixie Property. (*Id.* ¶¶ 101-105, 111.) In fact, the fraudulent credit facility agreement was never intended to serve as a source of funding for BSS. (*Id.* ¶ 103.) As of the date of the Amended Complaint, April 5, 2012, CRI had not provided any funding to BSS pursuant to the terms set forth in the credit facility agreement. (*Id.* ¶ 111.)[4]

Nakamoto further falsely represented to the bankruptcy court that he was the sole member of BSS. (*Id.* ¶ 106.) In fact, "Nakamoto and the other Defendants intended that members of Kelso's family would ultimately have an ownership interest in BSS," and "the family of Alexander

---

[3] From the record before the court, it appears that Patricia Ohle's husband, John B. Ohle III ("John Ohle") is a beneficiary of Royal Trust. (*See* Letter of Intent at 1 (referring to Mr. John K. Dalton, Jr., Mr. John Ohle, and Ms. Patricia Dalton Ohle as "Trustee and Beneficiaries of Royal Trust of New Orleans").) Royal Trust, in turn, owned a 50% interest in Storyville. It is undisputed that John Ohle was convicted of conspiracy to defraud the IRS and attempted tax evasion in 2010. *See United States v. Ohle*, 441 Fed. App'x 798, 799 (2d Cir. 2011).

[4] Defendant Strategic Business Development LLC ("Strategic") and its agent, defendant James Davidson ("Davidson"), are also alleged to have participated in the conspiracy by soliciting CRI to provide the fraudulent credit facility agreement. (Am. Compl. ¶¶ 97, 104.)

6

Kelso" was later listed as an owner of BSS in certain February 2011 marketing materials. (*Id.* ¶¶ 107, 110.)

As of April 5, 2012, when Plaintiffs filed their Amended Complaint, "the sale of the Winn Dixie Property to BSS ha[d] not been completed." (*Id.* ¶ 111.)

B. <u>Allegations Involving HR Properties</u>

Plaintiff HR Properties is a limited liability company organized under the laws of Delaware, with offices in Cook County, Illinois. (Am. Compl. ¶ 6.) Its co-managers are Scott Deichmann ("Deichmann") and John Ohle. (*Id.*)

In August 2006, prior to BS2LP's bankruptcy filing, HR Properties contracted for an option agreement to buy a partnership interest in BS2LP ("Option Agreement"). (*Id.* ¶¶ 40, 43.) HR Properties retained Adams and Reese for purposes of drafting and negotiating the Option Agreement, and the Law Firm Defendants sent a copy of the relevant engagement agreement to John Ohle and Deichmann at HR Properties' Chicago address. (*Id.* ¶¶ 40-41; *see also* Dkt. No. 1-1, Pls.' Ex. 1 ("Engagement Agreement") (erroneously cut-off at 3).) On November 30, 2006, John Ohle and Deichmann signed a waiver letter "allowing [Adams and Reese] to be retained by BS2LP to file for bankruptcy protection." (*Id.* ¶ 44; *see* Dkt. No. 1-2, Pls.' Ex. 2 ("Waiver Letter").) That same day, on November 30, 2006, BS2LP filed its bankruptcy petition in the Eastern District of Louisiana. (Am. Compl. ¶ 46.) The Waiver Letter was addressed to John Ohle and Deichmann at HR Properties' Chicago address. (*Id.* ¶ 45.) Although Adams and Reese disclosed the Option Agreement to the bankruptcy court, Adams and Reese did not disclose "that it also represented [HR Properties], as well as the debtor BS2LP." (*Id.* ¶ 48.)

HR Properties never exercised its option to purchase a partnership interest in BS2LP. (*Id.* ¶ 49; *see generally* Dkt. No. 1-3, Pls.' Ex. 3 ("2nd Partnership Agreement"); Dkt. No. 1-4, Pls.' Ex.

7

4 ("3rd Partnership Agreement").) Instead, an entity called Basin Street Development Company, LLC ("Development Company") purchased a 23.375% limited partnership interest in BS2LP. (Am. Compl. ¶¶ 38, 49-50; *see also* 2nd Partnership Agreement § 2.3(b).) Development Company, like HR Properties, is ultimately managed by John Ohle and Deichmann.[5] HR Properties does not appear to have had any other involvement with BS2LP or the Louisiana bankruptcy proceedings.

C. Plaintiffs' Causes of Action

Plaintiffs assert claims against all defendants for alleged violations of the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. §§ 1961, *et. seq.* ("RICO") (First Cause of Action); declaratory judgment of unjust enrichment (Second Cause of Action); common law fraud (Third Cause of Action); and civil conspiracy (Fourth Cause of Action). Plaintiffs further bring claims against the Law Firm Defendants for legal malpractice (Fifth Cause of Action) and breach of contract, negligent representation, and breach of fiduciary duty (Sixth Cause of Action). Finally, Plaintiffs bring claims against Pelican Loop and Nakamoto for breach of fiduciary duty (Seventh Cause of Action) and against the Green Coast Defendants for breach of contract (Eighth and Ninth Causes of Action).

LEGAL STANDARD

The Law Firm Defendants and the Green Coast Defendants both argue that Plaintiffs' Amended Complaint should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(3) and 28 U.S.C. § 1406(a) for improper venue. In the alternative, but only if this

---

[5] The Amended Complaint explains that Development Company was managed by an entity known as JSJD Development Company, LLC ("JSJD"), which, in turn, was managed by John Ohle and Deichmann. (Am. Compl. ¶¶ 52-53.)

court first finds that venue is proper in the Northern District of Illinois, all parties agree that this case should be transferred to the Eastern District of Louisiana pursuant to 28 U.S.C. § 1404(a).

"[O]nce the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found.*, 338 F.3d at 782. It is thus Plaintiffs' burden to "make a prima facie showing of jurisdictional facts," with the court viewing all factual disputes in the light most favorable to Plaintiffs. *Felland*, 682 F.3d at 672.

Federal Rule of Civil Procedure 4(k) sets forth the relevant statutory grounds for establishing personal jurisdiction in the federal courts:

> (1) *In General.* Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant:
>
> > (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located;
> >
> > [. . . or]
> >
> > (C) when authorized by federal statute.

Fed. R. Civ. P. 4(k)(1). Plaintiffs do not argue that personal jurisdiction is authorized by RICO's personal jurisdiction provision, 28 U.S.C. § 1965(b),[6] and the court therefore limits its analysis to whether the Law Firm Defendants and the Green Coast Defendants are subject to the jurisdiction of Illinois courts under Rule 4(k)(1)(A).

When personal jurisdiction is governed by the law of the forum state, "[t]he court's exercise of jurisdiction over the defendant must be authorized by the terms of the forum state's personal-jurisdiction statute and also must comport with the requirements of the Fourteenth

---

[6] Dicta of the Seventh Circuit suggests that personal jurisdiction may not be appropriate under the RICO statute if, as in this case, another federal court has jurisdiction over all named defendants. *See Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 672 (7th Cir. 1987).

Amendment's Due Process Clause." *Felland*, 682 F.3d at 672. Because Illinois's long-arm statute "permits the exercise of personal jurisdiction if it would be allowed under either the Illinois Constitution or the United States Constitution," this court need only determine "whether the exercise of personal jurisdiction would violate federal due process" to satisfy both conditions. *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (citing 735 ILCS 5/2-209(c)). Moreover, although personal jurisdiction "may be either general or specific," because Plaintiffs only rely on the court's exercise of specific jurisdiction in this case, the court further limits its analysis to the defendants' contacts with the forum state that are "related to the challenged conduct." *Felland*, 682 F.3d at 673.

The court's exercise of specific jurisdiction includes "three essential requirements: (1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Id.* The focus of the court's inquiry is ultimately "whether it is fundamentally fair to require [the defendants] to submit to the jurisdiction of the court *with respect to this litigation*." *Purdue Research Found.*, 338 F.3d at 780 (emphasis in original).

It is also Plaintiffs' burden to demonstrate that venue is appropriate in this court. *Grantham v. Challenge-Cook Bros., Inc.*, 420 F.2d 1182, 1184 (7th Cir. 1969). In this case, Plaintiffs allege and argue that venue is appropriate in the Northern District of Illinois because "a substantial part of the events or omissions giving rise to the claim occurred" in Illinois, as required by 28 U.S.C. § 1391(b)(2). (Dkt. No. 38 ("Pls.' Green Coast Resp.") at 9, n.2; Dkt. No. 39 ("Pls.' Law Firm Resp.") at 15 n.2.)

10

Finally, if this court finds that venue is appropriate in the Northern District of Illinois, the parties all agree that the case nevertheless should be transferred to the Eastern District of Louisiana for the remainder of this litigation, pursuant to 28 U.S.C. § 1404(a). If the court finds that venue is not appropriate in the Northern District of Illinois, the Law Firm Defendants and the Green Coast Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a).

ANALYSIS

Because "each defendant must have purposely established minimum contacts with the forum state such that he or she 'should reasonably anticipate being haled into court' there," *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)), the court addresses the Law Firm Defendants and the Green Coast Defendants separately in the analysis that follows.

The court's task is further complicated by the presence of two distinct entities that have chosen to litigate together as "Plaintiffs," despite alleged wrongs that appear to be unique to each entity. Although the presence of John Ohle serves as a common denominator between the two plaintiff entities—John Ohle is a co-manager of HR Properties and a beneficiary of the Royal Trust—John Ohle, himself, is not a plaintiff in this lawsuit. The court assumes that John Ohle was authorized to represent HR Properties in its dealings with the Law Firm Defendants, as a co-manager, but notes that HR Properties does not appear to have had any official interest in the BS2LP bankruptcy proceedings after electing not to purchase a limited partnership interest in BS2LP pursuant to the 2006 Option Agreement. It also does not appear the John Ohle was authorized to represent the Royal Trust in an official capacity, and Plaintiffs do not allege or argue that John Ohle acted as Royal Trust's agent for any purpose. Rather, as trustee Patricia Ohle stated

11

in a December 29, 2010 email to defendant Cheatham, "John has asked you repeatedly to contact me directly." (Dkt. No. 44-36, J. Ohle Aff., Ex. X.) To the extent Plaintiffs rely on the defendants' contacts with John Ohle to support jurisdiction in the Northern District of Illinois, the court has carefully scrutinized these contacts in an attempt to ensure that they are relevant to Plaintiffs' specific claims at issue in this case.

I.      The Law Firm Defendants

Plaintiffs' main allegation against the Law Firm Defendants is that they conspired with other defendants to unlawfully and fraudulently deprive the Royal Trust of its interest in the Winn Dixie Property. (Am. Compl. ¶ 4.) For purposes of this opinion only, the court accepts that the Amended Complaint states a plausible right to relief under RICO and the relevant common law with respect to Plaintiffs' First, Second, Third, and Fourth Causes of Action ("Conspiracy Claims").[7]

Plaintiffs also bring additional tort claims against the Law Firm Defendants for legal malpractice and breach of fiduciary duty, which the court analyzes separately below. Plaintiffs do not argue that their claims for negligent representation and breach of contract establish personal jurisdiction over the Law Firm Defendants.

A.      Conspiracy Claims

"Where a plaintiff's claim is for an intentional tort, 'the inquiry focuses on whether the conduct underlying the claim[ ] was purposely directed at the forum state." *Felland*, 682 F.3d at 674 (quoting *Tamburo*, 601 F.3d at 702). There are three requirements for demonstrating that a defendant's conduct was "purposely directed" at the forum state: "(1) intentional conduct (or

---

[7] The Law Firm Defendants and the Green Coast Defendants have both reserved the right to raise additional, non-jurisdictional arguments regarding the sufficiency of the claims alleged in the Amended Complaint.

'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Id.*

As noted above, with respect to Plaintiffs' Conspiracy Claims, the court accepts as true that the Law Firm Defendants intentionally conspired with other defendants to fraudulently substitute BSS for Storyville in the December Amended Plan. The question remains whether this conduct was "expressly aimed" at Illinois and whether the Law Firm Defendants knew that Plaintiffs would be injured in Illinois. *See Tamburo*, 601 F.3d at 704 ("As an analytical matter, *Calder's* 'express aiming' inquiry overlaps with the question whether the defendant knew the plaintiff would suffer the injury in the forum state, so we consider the two requirements together.") (referring to *Calder v. Jones*, 465 U.S. 783 (1984)).

"The cases that have found express aiming have all relied on evidence beyond the plaintiff's mere residence in the forum state." *Mobile Anesthesiologists Chicago*, 623 F.3d at 447. In other words, the Seventh Circuit has found personal jurisdiction only where there is both a "forum-state injury" *and* "something more" reflecting "tortious conduct specifically directed at the forum." *Tamburo*, 601 F.3d 706; *compare Coté v. Wadel*, 796 F.2d 981, 984 (7th Cir. 1986) ("The only significant connection between the suit and Wisconsin is that the plaintiff lives there; and you cannot get jurisdiction over a nonresident just by showing that you are a resident and would prefer to sue in your own state's courts.").

Plaintiffs argue the "something more" in this case consists of "legal services" provided by Adams and Reese "to Plaintiffs, or individuals acting on behalf of Plaintiffs, or Plaintiffs' successor entities" over a four-year period of time. (Pls.' Law Firm Resp. at 12.) One problem with this assertion is the blurred line between "Plaintiffs" and other individuals and entities. Beginning

13

with the 2006 Option Agreement for HR Properties, Adams and Reese appears to have been involved in various efforts by John Ohle to obtain an interest in BS2LP or the Winn Dixie Property. To the extent these efforts involve entities other than HR Properties or Royal Trust—for example, Development Company, Nouveau Carre, LLC,[8] Rebirth, or San Fran LLC—they are irrelevant to the court's analysis. The fact that John Ohle acted as the custodian of BS2LP's financial records beginning in December 2008, as asserted by Plaintiffs,[9] is further evidence suggesting that communications between Adams and Reese and John Ohle were not necessarily related to the alleged conspiracy to harm Royal Trust. On the contrary, Plaintiffs have alleged the following actions by the Law Firm Defendants *supporting* Royal Trust's goal of purchasing the Winn Dixie Property through Storyville and/or selling Royal Trust's interest in Storyville for a negotiated price:

- in February 2010, Pelican and Royal Trust organized Storyville "based on the advice of [Adams and Reese]," for the purpose of "purchas[ing] the Winn Dixie Property from BS2LP" (Am. Compl. ¶ 73);

- in August 2010, Pelican and Royal Trust negotiated an "LLC Member Interest Purchase Agreement," "based on the advice of [Adams and Reese]," through which "Pelican was to purchase all of Royal Trust's interest in Storyville" (Am. Compl. ¶¶ 80-81);

---

[8] Plaintiffs allege that Adams and Reese helped set-up Nouveau Carre, LLC "to purchase the Winn Dixie Property land from BS2LP." (Am. Compl. ¶ 59.) Plaintiffs' relationship to Nouveau Carre, LLC is unclear, but in any event it is clear from the Amended Complaint that Nouveau Carre, LLC did not purchase the Winn Dixie Property from BS2LP.

[9] As John Ohle testified in his affidavit, "[a]fter the transfer of the general partnership interest to Rebirth, all financial and other records of the BS2LP were kept in Chicago, Illinois at [HR Properties'] Chicago address," and "the vast majority of requests for information and financial records from [Adams and Reese] concerning BS2LP were handled by me or my employees operating out of [HR Properties'] Chicago address." (J. Ohle Aff. ¶ 8 (defining "the Chicago address"), ¶ 31.) The court accepts John Ohle's testimony on this point as true at this stage of the litigation, while noting that Plaintiffs have not explained *why* John Ohle or HR Properties acted as the custodian of BS2LP's financial records.

14

- in September 2010, Adams and Reese "repeatedly corresponded by telephone, mail and electronically with the Royal Trust and its representatives in Illinois . . . regarding the drafting and finalization of a modified Plan of Reorganization in the bankruptcy," (Am. Compl. ¶¶ 85-86) and, on October 1, 2010, Adams and Reese filed the "Sixth Amended Plan of Reorganization as modified as of October 1, 2010," which "stated that Storyville would buy the Winn Dixie Property" (Am. Compl. ¶ 87); and

- Adams and Reese assisted with Green Coast's proposed purchase of Storyville by drafting the Non-Circumvention Agreement, which was signed by Bradshaw on November 10, 2010 (Am. Compl. ¶ 88).

Accepting as true that the Law Firm Defendants provided legal services to HR Properties and Royal Trust from 2006-2010, while acknowledging Plaintiffs' failure to specifically allege that the Law Firm Defendants gave legal advice *to HR Properties or Royal Trust* with respect to the transactions described above, Plaintiffs must nevertheless establish that these contacts were relevant to the alleged Conspiracy Claims. Plaintiffs have not argued that the Law Firm Defendants provided any legal services to HR Properties or Royal Trust for the purpose of advancing the fraudulent scheme alleged in the Amended Complaint, nor have they argued that any particular communications between the Law Firm Defendants and Plaintiffs were related to the fraudulent scheme or necessary for its success. *Compare Felland*, 682 F.3d at 676 (identifying "an ongoing fraudulent scheme that included several letters, multiple phone calls, and almost two dozen emails, all to the [plaintiff's] home in Wisconsin").

Plaintiffs argue that the Law Firm Defendants "plainly used information obtained from Chicago in making [the fraudulent] submission" to the bankruptcy court, but this argument similarly appears to be unrelated to HR Properties and Royal Trust. (Pls.' Law Firm Resp. at 13.) John Ohle's supporting affidavit identifies the relevant materials as "information concerning contributions made by Development Company to . . . BS2LP's operating costs during the bankruptcy, and other information concerning capital contributions set forth in Exhibit E to the

15

December Amended Plan." (Dkt. No. 44 ("J. Ohle Aff.") ¶ 62.) Plaintiffs have not identified the "other" capital contributions referred to in John Ohle's affidavit, nor have they filed Exhibit E to the December Amended Plan with this court. Plaintiffs have also not explained how the Law Firm Defendants "used" information regarding Development Company's contributions to BS2LP in relation to the alleged conspiracy, and these contributions are not obviously relevant to the Conspiracy Claims. Unless the information regarding BS2LP's capital contributions involves HR Properties, Royal Trust, or the alleged conspiracy, it is irrelevant to the court's analysis.

As noted above, Plaintiffs must also show that the Law Firm Defendants knew the effects of their actions would be felt in Illinois. It is unclear whether the Law Firm Defendants were aware of any forum-state injury in this case, or whether a forum-state injury took place at all. Plaintiffs contend that, in light of the Law Firm Defendants' ongoing communications with John Ohle and Patricia Ohle, "[b]oth plaintiffs in this case were known by [Adams and Reese] to be based in Illinois." (Pls.' Law Firm Resp. at 2.) The court accepts that the Law Firm Defendants knew HR Properties had a Chicago office, as evidenced by the address appearing on the first page of the Engagement Agreement. It is also clear from the face of the Engagement Agreement that the agreement itself was sent to HR Properties' Chicago address "Via Email Transmission And U.S. Mail." (Engagement Agreement at 1.) On the other hand, Adams and Reese attorney James T. Rogers, III ("Rogers") has attested that John Ohle approached him about drafting the Option Agreement for HR Properties at a time when both Rogers and John Ohle were located in New Orleans, Louisiana. (Dkt. No. 26-1, Law Firm Defs.' Ex. 4 ("Rogers Aff.").) Rogers, Cheatham, and Hedrick have all attested that their only face-to-face meetings with John Ohle or Deichmann occurred in New Orleans.   (Rogers Aff. ¶ 10; Dkt. No. 26-1, Law Firm Defs.' Ex. 1 ("Cheatham Aff.") ¶ 16; Dkt. No. 26-1, Law Firm Defs.' Ex. 2 ("Hedrick Aff.") ¶ 14.) Plaintiffs have not

alleged or argued that the members or stakeholders of HR Properties, a limited liability company organized under the laws of Delaware, are residents of Illinois, or that the Law Firm Defendants were aware of the members' or stakeholders' residency. In other words, Plaintiffs have not explained why HR Properties should be considered to have been "based in Illinois." (Pls.' Law Firm Resp. at 2.) Without more, the fact that HR Properties had an Illinois office is insufficient to establish that HR Properties was injured in Illinois, or that the Law Firm Defendants were aware that HR Properties would be injured in Illinois.

Similarly, Plaintiffs have not explained why Royal Trust should be considered to have suffered injuries in Illinois, or how the Law Firm Defendants are alleged to have known that Royal Trust would be injured in Illinois. Royal Trust is organized under the laws of Louisiana, with its trustee, Patricia Ohle, residing in Illinois. (Am. Compl. ¶ 7.) Plaintiffs have not named any of Royal Trust's beneficiaries[10] or identified the location where any of Royal Trust's assets were maintained; there is also no evidence in the record that the Law Firm Defendants were aware of this relevant information. The fact that the Law Firm Defendants "corresponded . . . with the Royal Trust and its representatives in Illinois" in September and October 2010, (Am. Compl. ¶¶ 85-86; *see also* J. Ohle Aff. ¶¶ 50-51), is evidence only that the Law Firm Defendants knew Royal Trust, or its trustee, had an office in Illinois. Without more, however, the court cannot conclude that the Law Firm Defendants knew the effects of their conspiracy would be felt in Illinois. *Compare Ind. Charitable Trust v. Rees-Jones*, No. 1:11-cv-1559-SEB-DKL, 2012 WL 2149830, at *8 (S.D. Ind.

---

[10] The court has been able to ascertain that John Ohle was likely one of the beneficiaries of Royal Trust, and it appears that John Ohle maintained at least a winter residence in Illinois. (Letter of Intent at 1 (addressed to "Trustee and Beneficiaries of Royal Trust of New Orleans"); Cheatham Aff. ¶ 17; Hedrick Aff. ¶ 15.) The court remains unpersuaded, however, that the Law Firm Defendants knew the identity of Royal Trust's beneficiaries or the residence of John Ohle. (*See* Cheatham Aff. ¶ 17 (describing communications with John Ohle via cell phone and email); Hedrick Aff. ¶ 15 (same).)

June 11, 2010) (Barker, J.) (finding failure to prove the defendant had knowledge that the plaintiff trust would suffer "significant injury" in Indiana, where the relevant trust documents were signed in Virginia, Michigan, and Florida, the trust's bank accounts were maintained in Michigan, Colorado, Pennsylvania, California, New York, and Tennessee, and the trustee's address on the operative trust agreement was listed in Michigan).

Because Plaintiffs have failed to establish that the Law Firm Defendants expressly aimed their conspiracy-related conduct at Illinois, with the knowledge that Plaintiffs would be injured in Illinois, the court cannot find that the Law Firm Defendants purposely established minimum contacts with the State of Illinois, such that they should have reasonably anticipated being haled into the Northern District of Illinois to respond to Plaintiffs' Conspiracy Claims.

B.     Legal Malpractice and Breach of Fiduciary Duty

Plaintiffs contend that they have also asserted "claims for legal malpractice and breach of fiduciary duty . . . [based on] a course of misconduct occurring for over four years and involving at least six separate transactions in which [Adams and Reese] provided legal advice to these Illinois based individuals and entities." (Pls.' Law Firm Resp. at 2.) Plaintiffs have not articulated the exact "misconduct" at issue, nor is it clear whether Plaintiffs are claiming intentional or negligent misconduct. (*See* Pls.' Law Firm Resp. at 12 ("Plaintiffs can plainly establish jurisdiction under either the intentional tort standard or under a negligence standard.").)

The Amended Complaint alleges that the Law Firm Defendants breached their fiduciary duties to Plaintiffs only "by participating in, allowing and/or aiding the Enterprise in its scheme to cut the Royal Trust and Storyville from the Winn Dixie transaction." (Am. Compl. ¶ 208.) As discussed in detail above, the Law Firm Defendants' conduct with respect to the alleged conspiracy is insufficient to establish personal jurisdiction in the Northern District of Illinois.

Plaintiffs' claim for legal malpractice appears to encompass more than just the alleged conspiracy, but for the most part does not specifically identify any misconduct, instead alleging only that the Law Firm Defendants "breached their duties to Plaintiffs by the conduct alleged herein above." (Am. Compl. ¶ 196.) The only specific examples of alleged misconduct not related to the conspiracy are the Law Firm Defendants' failure "to operate without a conflict between the interests of Plaintiffs and other clients . . . and/or the [Law Firm] Defendants' own pecuniary interests," and the Law Firm Defendants' failure to disclose these conflicts to the bankruptcy court. (*Id.* ¶¶ 194-95.)

Regardless of whether Plaintiffs are alleging intentional or negligent actions on the part of the Law Firm Defendants with respect to their legal malpractice claim, Plaintiffs must show that the Law Firm Defendants "purposefully availed [themselves] of the privilege of conducting business in the forum state or purposefully directed [their] activities at the state" and that Plaintiffs' "alleged injury . . . [arose] from the [Law Firm Defendants'] forum-related activities." *Felland*, 682 F.3d at 673. Merely establishing or maintaining an attorney-client relationship with a resident of the forum state is not enough to establish personal jurisdiction over an out-of-state defendant in a legal malpractice case. *Coté*, 796 F.2d at 984; *see also Mitchell v. Shiffermiller*, No. 03 C 4794, 2004 WL 178188, at *3 (N.D. Ill. Jan. 14, 2004) (Holderman, J.) (finding lack of personal jurisdiction where "it is clear that [plaintiff's] claim in this court for legal malpractice does not arise out of or relate to [defendant's] contacts with Illinois.").

Plaintiffs argue that the "extent, breadth and duration of contacts at issue in this matter" differentiate their legal malpractice claim from the cases cited above, again relying on the Law Firm Defendants' "contacts with Illinois in providing legal services to Plaintiffs *and their related entities* for years after the BS2LP bankruptcy." ((Pls.' Law Firm Resp. at 14 (emphasis added).) As

19

discussed above, communications between the Law Firm Defendants and entities other than HR Properties and Royal Trust are irrelevant to the court's analysis. Moreover, because Plaintiffs have not identified any "misconduct" with respect to Royal Trust, apart from the alleged conspiracy, it is difficult for the court to ascertain whether the Law Firm Defendants' communications with Royal Trust are relevant to Plaintiffs' claim for legal malpractice. Plaintiffs have not relied on any specific communications with Royal Trust for purposes of establishing personal jurisdiction with respect to the legal malpractice claim, and the court declines to sift through Plaintiffs' evidence to search for any relevant communications.

Plaintiffs' claim of legal malpractice is more specific with respect to HR Properties, and Plaintiffs have specifically alleged in their Amended Complaint that the Law Firm Defendants sent the Waiver Letter to HR Properties' Chicago address. (Am. Compl. ¶¶ 44-45.) This conduct is both forum-related and relevant to Plaintiffs' legal malpractice claim.[11] On the other hand, Plaintiffs have not articulated how their injuries "arise[ ] from" this forum-related activity. *Felland*, 682 F.3d at 673; *see also Bourke v. Conger*, 639 F.3d 344, 347 (7th Cir. 2011) ("A plaintiff in a legal malpractice case 'must plead and prove that [he] has suffered injuries *resulting* from the defendant attorney's alleged malpractice.'") (citation omitted) (emphasis in original). Plaintiffs have not alleged or argued that the act of sending the Waiver Letter constituted legal malpractice, or that the Waiver Letter, itself, caused Plaintiffs any damages. Plaintiffs also have not alleged or argued that the Law Firm Defendants' failure to operate without a conflict of interest caused them any specific damages, or that Plaintiffs would have done anything differently if the

---

[11] In their briefing, Plaintiffs do not specifically rely on the Waiver Letter to establish personal jurisdiction in this case. The court nevertheless addresses the Wavier Letter as the most obviously relevant communication between the Law Firm Defendants and HR Properties with respect to Plaintiffs' legal malpractice claim.

Law Firm Defendants had not simultaneously represented HR Properties and BS2LP in the bankruptcy proceedings. Without more, the Waiver Letter is insufficient to establish personal jurisdiction over the Law Firm Defendants with respect to Plaintiffs' legal malpractice claim.

Because Plaintiffs have failed to make a prima facie showing that the Law Firm Defendants' conduct relevant to the claims in the Amended Complaint was purposefully directed at the State of Illinois, or that Plaintiffs' claimed injuries resulted from the Law Firm Defendants' forum-related conduct, this court lacks personal jurisdiction over the Law Firm Defendants with respect to this litigation. The Law Firm Defendants' motion to dismiss for lack of personal jurisdiction is therefore granted.

II.     The Green Coast Defendants

Plaintiffs allege that the Green Coast Defendants, like the Law Firm Defendants, conspired with others to unlawfully and fraudulently deprive the Royal Trust of its interest in the Winn Dixie Property. (Am. Compl. ¶ 4; *see also* First, Second, Third, and Fourth Causes of Action.) Plaintiffs further allege that the Green Coast Defendants are liable for breach of contract with respect to the Non-Circumvention Agreement and the Letter of Intent. (Eighth and Ninth Causes of Action.) Because "the nature of the purposeful-direction/purposeful-availment inquiry depends in large part on the type of claim at issue," *Felland*, 682 F.3d at 674, the court addresses each set of claims separately.

A.     Conspiracy Claims

With respect to the Conspiracy Claims, Plaintiffs have not set forth any intentional conduct on the part of the Green Coast Defendants that was expressly aimed at the State of Illinois. Rather, Plaintiffs repeat their assertion that the conspiracy relied on information obtained by Adams and Reese from Chicago in filing the December Amended Plan. (*See* Pls.' Green Coast Resp. at 8-9

21

("That submission of the bankruptcy reorganization modification on December 22, 2010, relied on [Adams and Reese] and Green Coast's access to the BS2LP document 'trove' located in Chicago, Illinois. [Adams and Reese] certainly used information obtained from Chicago in making that submission.").) As discussed above, Plaintiffs have failed to demonstrate that this exchange of information was relevant to HR Properties, Royal Trust, or the Conspiracy Claims. Accordingly, the court finds that jurisdiction over the Green Coast Defendants cannot be founded on the alleged Conspiracy Claims.

B.    Breach of Contract Claims

With respect Plaintiffs' breach of contract claims, it is well settled that "an out-of-state party's contract with an in-state party is alone not enough to establish the requisite minimum contacts." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997) (citing *Burger King*, 471 U.S. at 478). Instead, courts consider whether the terms of the contract, its contemplated future consequences, the parties' prior negotiations, and the parties' "actual course of dealing" indicate "the purposeful availment that makes litigating in the forum state foreseeable to the defendant." *Id.* As with all matters of specific jurisdiction, Plaintiffs' breach of contract claims must also "arise out of or be related to [the Green Coast Defendants'] minimum contacts with the forum state." *Id.*

Plaintiffs argue that jurisdiction is established in this case because the Letter of Intent required "significant due diligence that Plaintiffs provided to defendants from their offices in Chicago, Illinois." (Pls.' Green Coast Resp. at 8.) This argument is somewhat confusing, because the Letter of Intent requires *Green Coast*, not Plaintiffs, to "perform the due diligence items outlined below by Wednesday, December 1, 2010." (Letter of Intent ¶ 3; *see also* Letter of Intent at 2 (acknowledging "it is our responsibility to get them done by December 1").) The due diligence

22

items listed in the Letter of Intent do not explicitly require the Green Coast Defendants to transfer any information to Royal Trust or to request any information from Royal Trust.

More important, Plaintiffs' breach of contract claims are not based on the Green Coast Defendants' failure to meet their due diligence obligations under the contract. Even accepting that the Green Coast Defendants requested Royal Trust to provide certain due diligence information related to the Letter of Intent, and that those requests were responded to by "representatives of the Royal Trust operating out of the Chicago office," (Dkt. No. 43 ("P. Ohle Aff.") ¶ 4), Plaintiffs' alleged injuries did not arise out of the Green Coast Defendants' requests for information.

On its face, the Letter of Intent requires no action on the part of Royal Trust. Plaintiffs have not argued that the Letter of Intent was executed in Illinois, or that it required Green Coast to take any actions in Illinois. There is also no evidence of prior negotiations between Green Coast and Royal Trust involving the State of Illinois. The Letter of Intent, itself, was emailed to John Ohle and Patricia Ohle, and was not mailed to an Illinois address. (Letter of Intent at 1 ("By email to: John@Storyville-nola.com; patty.ohle@me.com").) Without more, Plaintiffs have failed to establish that the Green Coast Defendants could have reasonably foreseen that they would be haled into the Northern District of Illinois to defend against Plaintiffs' breach of contract claims in this lawsuit. Accordingly, the Green Coast Defendants' motion to dismiss for lack of jurisdiction is granted.

<u>CONCLUSION</u>

For the reasons set forth above, the "Law Firm Defendants' Motion To Dismiss Or Transfer To Eastern District Of Louisiana" (Dkt. No. 25) and the "Green Coast Defendants' Combined Motion To Dismiss And Transfer To Eastern District Of Louisiana" (Dkt. No. 27) are both granted, and all claims against the Law Firm Defendants and the Green Coast Defendants are

dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Plaintiffs are given until 3/26/13 to file a statement showing cause why this case should not be dismissed in its entirety for failure to serve the remaining defendants pursuant to the 120-day time period set forth in Federal Rule of Civil Procedure 4(m).

ENTER:

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date:   March 12, 2013